No. 27.—MALINDA HARGROVES and others, plaintiffs in error, *vs.* ROBERT BATTY, administrator, and others, defendants in error.

[1.] Every one who acquires assets by a breach of trust in the executor, is responsible to those who are entitled to the assets, if he is a party to the breach of trust.

In Equity, in Floyd Superior Court. Decision on demurby Judge TRIPPE, June Term, 1855.

This bill was filed by Malinda Hargroves, the widow and others, the children of Zachariah B. Hargroves, dec'd, (who were also the devisees under his will,) charging that said Zach. B. died possessed of sundry lots of land in and about the town of Rome, of great value, and specifically set out in the bill; that said Hargroves was, at the time of his death, Cashier of the Western Bank of Rome; that as such cashier, he gave bond, with one Tomlinson Fort as his surety. Shortly after his death, one William Smith, claiming to be the President of the Western Bank of Rome, pretended to have discovered a great defalcation in the cash assets of said bank, and charged the same upon said Hargroves; that he demanded settlement of the same from James M. Spurlock and the said Malinda, who were the executor and executrix of the last will of said Hargroves. They refused so to do, and suit was commenced against them as executors, in the name of the West. Bank of

Rome. In the meantime, Smith managed to have Tomlinson Fort informed of the alleged defalcation and suit, and his probable liability as surety, and thus alarmed him very much. Fort immediately repaired to Cass County, and urged the executor and executrix to settle the claim, and finally over-persuaded them and induced them to recognize the claim; and in settlement thereof, (in August, 1840,) the said executor and executrix conveyed, by deed, to said William Smith, the valuable real estate before mentioned, for the sum of $10.000. The deed was made to Smith, because the charter of the bank forbade the corporation to purchase and hold real estate, and was done in fraud of the charter. The bill alleged that there was no such defalcation in fact, and the book of accounts of the bank showed that there was no such defalcation, which book of accounts it alleged Smith subsequently burned or otherwise destroyed, for the express purpose of depriving complainants of this evidence; that Fort was a relative of complainants, and had great influence over the executor and executrix, holding out to the said Malinda the exposure of her husband's defalcation and the ruin of his character, as inducements to procure her signature to this deed. The deed was not delivered to Smith, but was delivered to Fort, to be held until there was a farther reduction of $4.000 upon the claim of the bank, but Fort confederating with Smith, paid no regard to this condition, but delivered up the same immediately to Smith; that Smith has since conveyed different portions of this real estate to Alfred Shorter, C. M. Pennington and John H. Lumpkin, each and all of whom purchased with full notice and knowledge of the fraudulent manner in which Smith obtained this deed. The bill made these purchasers co-defendants with Smith. The prayer was, that the deed to Smith be annulled and set aside, and all the subsequent conveyances from Smith; that the property be placed in the hands of a receiver, to pay off the creditors of Hargroves, and pay the balance to complainants; and that the defendants account for the rents, issues and profits of the said property.

To this bill a demurrer was filed—

1st. For want of parties, viz: James M. Spurlock and Malinda Hargroves, the executor and executrix of Hargroves, and testamentary guardians of the minor children; also, the creditors of Hargroves; also, Tomlinson Fort and the Western Bank of Georgia.

2d. For want of Equity.

The demurrer was sustained and the bill dismissed; and this decision is assigned as error.

PRINTUP; WRIGHT; COBB, for plaintiffs.

UNDERWOOD; HULL, for defendants.

*By the Court.*—BENNING, J. delivering the opinion.

In the language of Sir *John Leach*, " Every one who acquires personal assets by a breach of trust or *devastavit* in the executor, is responsible to those who are entitled, under the will, if he is a party to the breach of trust." (*Ram on Assets*, 490 ; *and see Williams on Ex'rs*, 609. *Story's Eq.* §§422, '3, '4, 579, 580, '1. *Gilbert vs. Thomas et al.* 3 *Ga. R.* 581.)

Much more is this true if the executor be insolvent. And in this case, the executor is said, by the Counsel for the plaintiff, to be insolvent. And this Court ordered that the bill should be amended, by the addition of an allegation to that effect.

In this State, the proposition is not to be confined to *personal* assets, for in this State real property and personal property are " considered as altogether of the same nature and upon the same footing" as to distribution. (*Pr. Dig.* 233.)

If the bill be true, and the demurrer admits it to be true, there was no foundation, whatever, for one of the claims which Smith, the president of the bank, presented to the executors for payment; and this was known both to Smith

and to Spurlock, one of the executors—the one who controlled the assets.

The application of assets by Spurlock, to the payment of such a claim, was clearly a breach of trust—a *devastavit;* and Smith, knowing the nature of the claim—knowing its falseness, by receiving such assets in payment of it, became a party to the breach of trust.

Consequently, Smith became responsible for those assets, to the person entitled to the assets ; and they, it seems, were the plaintiffs as legatees ; that is to say, the plaintiffs consequently became entitled to follow the assets into the hands of Smith.

And if the bill be true, Shorter, Pennington and Lumpkin took the part of the assets which they respectively got, either mediately or immediately from Smith, with the same knowledge which Smith had of the facts which constituted the *devastavit.* Neither of them, therefore, can be in any better condition than Smith would have been in, had he not parted with the assets.

The result is, that the complainants have the right to follow the assets which were applied to the payment of the false demand, into the hands of the defendants.

It seems that the assets turned over to Smith, were turned over to him on the making of a settlement—a settlement not only of the false demand aforesaid, but also of several other demands, which were not false—these amounting, in the aggregate, to say $1.517 93—that to $12.850.

This being so, if it cannot be ascertained which of the assets turned over were those which were applied to the payment of the false demand if any in particular were so applied, then, of necessity, the settlement will have to be set aside, and all the assets used in it considered as assets still belonging to the estate; and therefore, as assets subject to be applied in a due course of administration.

Perhaps even if that could be ascertained, yet, the settlement would nevertheless have to be aside : for when a part of the *consideration* of a contract is void, the whole contract

is said to be void, although the other part of the considera-
tion may be good. (1 *Smith's Lead. Cases*, 169.) And the
greater part, by far, of the consideration moving to the ex-
ecutor for the making of this settlement, was void.

For these reasons, we think that there was equity in the
bill.

The questions, whether the Western Bank of Rome is not,
by its charter, forbidden to *buy*, as well as to *buy and hold*
real property? Whether it is not forbidden to do this by the
Statutes of *Mortmain?* Whether the deed was ever deliv-
ered, except as an escrow? are each important questions;
but as they were not much argued, and as it is not essential
that they should be decided, they are not decided.